Case number 19-2043. Susan Allan et al. PA Higher Education Assistance Agency. Four arguments not to exceed 15 minutes per side. Ms. Sandra Jasinski for the opponent. You may proceed. May it please the court. Sandra Jasinski. I represent the Pennsylvania Higher Education Authority Agency. The primary question for the court today is whether the Telephone Consumer Protection Act allows FEA to contact delinquent borrowers from a daily curated list of numbers that are not randomly or sequentially generated. The answer to that question is yes. This appeal is really the sequel to the order that the State Circuit issued in Gary v. True Blue in September 2019. In addition to Judge Seiler who was on the panel, the other judges in Blue matter included Judge Norris and Judge Sutton. In that order, the panel affirmed the decision issued by the Eastern District of the Federal District Court Judge Gershwin-Drain in which he denied the motion for summary judgment. The panel agreed with Judge Drain that in order to qualify as an automatic telephone dialing system or an ATPS under the TCPA, the equipment had to have the capacity to generate random and sequential numbers. In True Blue, the panel concluded that Judge Drain was correct, that the plaintiff had failed to rebut the defendant's affidavit, that the equipment in question lacked the capacity to generate random or sequential numbers. Now in this case, just as in True Blue, plaintiffs don't dispute the affidavit that was submitted by FIA's manager that the appellant's Avaya system simply doesn't have the capacity to randomly or sequentially generate telephone numbers. So this is the sequel to True Blue in that the court is now being asked to determine if the TCPA is violated if the calling equipment equipment simply calls from a carefully curated list which requires significant human intervention to create and then to call the numbers on that particular list. In the TCPA litigation in the past couple of years, the parties frequently comment on how the landscape in this area of the law shifted when the DC Circuit issued its decision in PCA International. That's true. In this particular case that we're arguing today, the landscape shifted a second time after the parties filed their briefs on appeal because we have the 11th Circuit and the 7th Circuit both issuing published decisions holding that in order to qualify as an ATDS, the statutory phrase of using a random or sequential number generator modifies the two conjoined forms that precede it, store or produce. And isn't there a circuit conflict between those two circuits and the 9th Circuit which I think had a decision in 2018 and then the 2nd Circuit which had a decision just this month. So we have two and two as I understand it interpreting that very phrase. You're right that there's a split but I would also suggest, Your Honor, that the 3rd Circuit has implicitly adopted the position of the 11th and the 7th want to get to that issue that you're taking us to but I just thought it's important you've mentioned two circuits going your way and there are two circuits going the other way. And the 6th Circuit gets to decide which path it wants to go down, whether it chooses to go down the 9th Circuit and the 2nd Circuit's decision or whether it wants to go down the path of the 11th and the 7th Circuit. Can I ask a question? Your client was involved in one of the cases, was it the 11th Circuit case? It was, it was. Is the technology exactly the same? Technology, as far as I understand, well I can't say that for certain, Your Honor, because in this case the calls that are an issue were made in 2013 and 2014. I have not, I've looked at a lot of the pleadings in a lot of these cases, I do not know when the and Evans, but as I understand. But is this case functionally equivalent to the one? It's functionally equivalent. It's functionally equivalent. There is no dispute and the plaintiffs have not disputed that the equipment that is an issue that the ABIAS system cannot, it doesn't have the capacity to randomly or sequentially generate numbers. It would make no sense. I mean they're essentially debt collection calls so that just simply does not make sense. In terms of how the calling lists are prepared on a daily basis, I believe that that has remained constant. So yes, they're functionally equivalent. So the key then to get to the statutory language is to store or produce telephone numbers to be called, comma, using a random or sequential number generated, right? That's absolutely right. And how the courts have interpreted that. We're urging this court to adopt the reasoning in the 3rd and the 7th and I think that for purposes of analysis, what's particularly helpful is the 11th Circuit decision that was written by Judge Sutton. He was sitting on that panel by assignment. He engaged in a very detailed, careful analysis of the questions of whether calling from a stored list violated the TCPA. One of the first things that he did as a preliminary point was know that while he disagreed with the Marx decision out of the 9th Circuit as it concerns statutory interpretation, that he did agree with the Marx analysis that ACA wiped the slate clean, as that phrase is used, as it concerned the FCC's earlier orders on that point. And after reaching that conclusion and he went through the statutory analysis noting, he lamented that clarity did not jump off the cage of the U.S. code, but he simply applied what he described as conventional rules of grammar and punctuation. The definition of ATDS refers to two conjoined verbs, store or produce, that share a direct object, telephone numbers to be called, and it's followed with a modifier using a random or sequential number generator. Can you explain how you would store using a random or sequential number generator? At some point between the actual identification of the number and the production of that number, there's some storage that has to occur. And Judge Sutton noted that in his opinion. The other thing that he noted in his opinion, and I think was... I don't think you've answered my question, and it's truly trying to understand this complex area. How do you store using a random or sequential number generator? Even if it's for a nanosecond between when you identify and produce it, something has to happen to it. That number has to, something, it just doesn't disappear into the... But isn't it just produced via a random or sequential number generator as opposed to being stored via using a random or sequential number generator? Well, storage is a function of that. What Judge Sutton noted, and that's a lot of what the court struggled with in the Second Circuit. That's something that the dissent in Glasser struggled with. It's like, how are these numbers stored? It was conceptually something that they couldn't wrap their heads around. And Judge Sutton, I think, dealt with that very effectively in the majority opinion that he wrote. And he went back and he looked at the regulatory record. And he cited, after the Marx decision, the FCC elicited comments from the public. They'd done so before, after ACA was issued, saying, okay, what do we do now? And then after Marx was issued, they solicited additional public comments on how to interpret an ATDS. And in those public comments, as Judge Sutton noted, there were comments that were submitted by a company called Noble Communications, Noble Concepts. And those comments, Judge Sutton noted, found that at the time the TCPA was enacted, there were actually devices that stored randomly generated numbers that may or may not have been called. There were patents that had been issued for random number generators that stored them 10 years before the statute was enacted. And so for Judge Sutton, and also for Judge Barrett, who relied on that analysis and cited that analysis in the Seventh Circuit decision, that historical context led to the conclusion that the use of random number generators applied to store didn't make the statute in any way superfluous. What they were doing at the time was covering the waterfront of all devices that were out there. I'm trying to understand one of your comments just now. You said store randomly generated numbers, but that's not what the statute says. The statute says store using a random or sequential number generator, which is completely different than storing randomly generated numbers, it would seem. It says store or produce numbers that are randomly generated. No, it doesn't say numbers that are randomly generated. It says store or produce numbers to be called using a random or sequential number generator. Correct. And that modifier modifies both store and produce. Why doesn't it modify telephone numbers to be called? You store or produce telephone numbers to be called using a random, the numbers are to be called using a random or sequential number generator, aren't they? I mean, I don't understand how you can produce the number and then not necessarily have already stored it. Why is store, I don't know, what does store do at all if you're looking at production? Well, that's one of, your honor raises a point that my opposing counsel has in saying, well, that would render, I mean, there's a surplusage argument that would be implicated there. But I don't, I don't think that that is the case. And what you're looking at, I think is the last antecedent rule. I think clearly when you look at the modifier. How can you say that store isn't surplusage here, if the only way you're using a random or sequential number generator is to produce them? Well, store, store isn't surplusage. The manner in which my opposing counsel would characterize it reads out, would actually read out the random number generation feature of it. Not reading it out vis-a-vis produce. That takes us back to the grammar issue, but I don't understand how the storing using a random or sequential number generator adds anything to producing using a random or sequential number generator. Your honor, I think that in terms of the statutory language and what prompted it, as the comments made to the FCC cited by Judge Sutton were to cover all of the technology that was in existence at the time, which noted that there were devices that would store randomly generated numbers and they may never be called. And there were devices that both store and produce them and then called them. The choice of the language was very intentional. I see your time has been up. I'm sorry that I didn't notice it before, but the red sign is up. We'll let you have your rebuttal time. Thank you, your honor. Mr. Hill. May it please the court. Adam Hill and I represent the appellees in this matter, Susan Allen and Jessica Wilson. And I think your honors kind of touched upon this point or I guess this point has been addressed. And as any court to really address this issue, the language that is used to define an automatic telephone dialing system in the statute is far from perfect. It is clearly ambiguous, I believe. As my co-counsel mentioned, clarity does not jump off the page. I believe that the Seventh Circuit even mentioned the language is such that a grammarian would want to drop down his or her pen. It is poorly worded to say the least. The problem with the way that the Seventh Circuit and the Eleventh Circuit tried to correct this problem is by using rules for what is proper grammar to try and interpret what is clearly improper grammar. And I believe in both courts' analysis, we see the problems that have arisen with their interpretation when they say that using a random or sequential number generator applies to not just the produce function because I don't think there's any question that using a random or sequential number generator can apply to how telephone numbers are in fact produced. But then they say, but then both courts have said that using random or sequential number generator also applies to how those numbers are stored. And Your Honor asked the question, well, how is a number stored using a random or sequential number generator? We still don't have an answer to that question. And in fact, both the Seventh Circuit and the Eleventh Circuit mentioned that there is an oddity. I believe in the Eleventh Circuit says the first hiccup is the oddity of storing telephone numbers using a random or sequential number generator. The Seventh Circuit said it is hard to see how a number generator could be used to store telephone numbers. Even the Third Circuit in what I'm going to call Dominguez 1 in 2015 acknowledged that a number cannot be stored using a random or sequential number generator. So when we're looking at... But what is your argument about what, so what is to be stored? Just telephone numbers? As long as something has the capacity to store telephone numbers and dials those numbers, that satisfies the statute? Yes, the statute would apply to any system that has the capacity to store telephone numbers and then automatically dial those telephone numbers. It's not just the fact that it can store numbers and then dial numbers. Because I know that there is a lot of questions and concern that if a reading is But I think where there is a distinction is first the D.C. Circuit and ACA International did address the concern that this statute could be applied to smartphones when it addressed the capacity issue. Because when the 2015 FCC order came out, it determined that capacity did not apply just to the current actual capacity of the system, but it would apply to the potential capacity that could be, I guess, that a system could have the, could be able to perform. Such as, and I know like say for example iPhones were the big concern, that an iPhone could have the potential capacity to have some kind of application downloaded to it that could then cause it to function as an auto dialer which would mean that even if your iPhone doesn't have that capacity at the time, it could be considered an ATVS because of the fact that it had the potential capacity. But that was that was the FCC went a bit too far when it addressed the potential capacity, which is why it vacated the potential capacity issue and said, no, it has to be the actual capacity. Which essentially brought it back to the 2003 FCC ruling that said that any system that has the capacity to store telephone numbers, whether or not they're generated by the system itself or stored somewhere separately in the list. I'm sorry, let me go back for a second. So you're saying that a smartphone would not qualify because it can't automatically dial the numbers? That yes, it can store them but I can't I can't automatically dial numbers? Correct, a smartphone would not have the capacity to automatically dial telephone numbers. There have been courts that have said that using essentially speed dialing or going to someone's like go going into your phone and saying I want to call Jim, finding Jim, selecting Jim, and then calling Jim, that's not automatic, that's actually human intervention. And I think that's where the human intervention does come into play and why a smartphone wouldn't be considered. Okay, but then but you but why is there not so there's obviously human intervention when a company says here are the 100 delinquent borrowers we have and uploads the list to an auto dialer, I'll say. But they've already intervened by calling that list, haven't they? I mean, why isn't that enough human intervention to say that's not what was intended here by Congress? Because both the Second Circuit and the Ninth Circuit have addressed that issue and said there has to be some human intervention at some point, whether it's turning on a machine or clicking send to not dial send to one person because I want to call Jim, now I'm done calling Jim, I want to call Kelly, let me call Kelly. It's here are hundreds of numbers or thousands of phone numbers, send, I'm going to call hundreds or thousands of phone numbers under that and that's what that's what Congress was trying to prevent the ability for somebody to do that, to say I want to download, I want to buy a list of every telephone number in Cincinnati and I'm going to put that all that list into my system and I'm just going to start calling each and every single person. Your point is well taken, but what if I'm a company and I have borrowers and some of them are delinquent and it happens to be thousands of borrowers that are delinquent, I put all of their numbers in and I call them and I make it easier on my customer service people so they don't have to punch in the numbers every time so the machine does it for me, but I'm still 60 days, 30 days, I don't know, but I'm just that's the that's the sequence that I'm using, those are the borrowers that I'm calling, why is that not like using my iPhone and just saying, hey Siri call Jim, you know, hey Siri call this delinquent borrower. Because in that instance you say I want to call this one person and you are saying I'm calling them at this time when the call connects, I'm there, I'm there on the phone versus the other scenario where you have call or a thousand delinquent borrowers, you put that phone up, you put that list into the database, the system starts calling all those hundreds of thousands of people, however many it is, then maybe it connects, maybe it doesn't, if it does connect, maybe a person is available to take that call, maybe a person is not. I believe the FCC had been inundated with complaints of that's called dead air because the system was calling people, people would answer their phone and then there's nobody there and that that's not the case where if you use your smartphone and say call call Jim, call Betty, you're there on the phone because you decided I want to call this person at this time versus an ATDS which just calls hundreds or thousands of people at a time and if it connects it hopefully there's someone that's available to take that call. Suppose you you had an iPhone and suppose that your iPhone had a list of hundreds or thousands of contacts, suppose you could tell your iPhone call my contacts alphabetically, would that fall within this provision? I think if you're just looking at the language, there is a possibility that yes something like that could be if that is the capacity of it at the time but there's also some other case law in the I believe it was in the northern district of for families, people calling their families, calling their friends, calling their acquaintances. That's not what this law is meant to prevent, that's not what it was intended to prevent, that's not how it should be applied. This law should be applied to what we see at issue here where someone says I have however many delinquent borrowers, I'm just going to put the list of delinquent borrowers into this system and the system is going to call them. If it connects hopefully I have someone who's available to take that call hopefully but if not it's just going to keep calling and calling and calling and that's what Congress was trying to prevent with the TCPA. In fact I believe Senator Holdings, one of the sponsors of the TCPA mentioned about how these calls keep ringing and ringing and ringing, wake people up in the morning, force the elderly out of bed, interrupt families when they're having dinner, so much story you just want to just rip just throw your phone across the room to get the calls to stop. It's this constantly it's Congress was trying to I guess a problem that they were trying to address with the TCPA and that's what that's what they did. But there was a but that's true but there was also some idea that they were generating random numbers and calling them and that was the problem with bothering people with solicitations that they never signed up for, they never agreed to, they're just getting random numbers. I mean I take it it would be okay if FIA decided so they just have a hundred you know whatever ten thousand names they divide them up you know into 500 they give them to customer service people they sit at a phone and they just go through the sequence dial them all them physically sit there and dial them all themselves and if the borrower is there they talk to them they leave a message whatever that would be okay I assume yes yes that would be okay that that is that is one person but if they just have a machine that makes it easier it just dials the number for the person sitting at the desk that makes it not okay correct and if it just runs and if it just runs through the list and keeps dialing until it possibly connects with someone and then connects that person to a to an agent then that is that is the type of type of system that that congress was trying to address with the TCPA. Is there a an exception for government debt collectors? Yes yes there is which which and I think many courts and I know many people have briefed that that obviously when if there's an exception to government debt people trying to collect government government-backed debts that implies that how is how is an ATDS going to call someone who owes a debt to the government not by generating a random or sequential number hoping that the person one who they connect who answers that call one owes a debt two admits yeah you found me I owe the government money how much no they're going to have a list of people that owe that owe debts to the U.S. government and they're going to use they're going to call that list they're not going to call it random random whoever they're going to people on a specific list so if there's if there's an exception for government debt collectors then that would suggest that private debt collectors are covered by this provision is that right covered by the exception or no by the by the provision that we're trying to construe here yes yeah because the the fact that there is a government-backed debt collection exception shows that I mean I don't think there's anyone that would believe that a government-backed government debt collectors are going to dial random numbers they're going to dial specific phone numbers those specific phone numbers people who owe debts and that's and that was exempt from calls placed with an ATDS I mean so that that shows that Congress intended yes list-based dialing systems are going to be is what an ATDS is capable of doing which is what we see in the not clear language but that's why we see store or produce because it covers that one you can call list-based dialers because that's numbers that are stored and then dialed but then as we mentioned the I guess the generating random numbers that's the production aspect of it so that ATDS covers two types of equipment one that stores numbers and automatically dials those second one that produces these numbers with these number generators and then dial those those are the two types of systems that Congress intended to be covered by an ATDS and that the TCPA was meant to regulate is that the government debt exception is that the case that's at the Supreme Court right now yes I believe so I can't remember the name of it I'm embarrassed to say but you'd be yes I believe that is one or circuit right and as for that what is there some argument in that case that the statute is just spatially invalid or would it only invalidate the government debt exception so I why that obviously would depend on who you who you ask I think whenever it's been brought to any district or circuit court any district or circuit court said that that government back that exemption is basically excised from the rest of the statute as that portion being invalidated but the entire statute as a whole should not be invalidated I think there's another another argument from another side that says given that new exception which was I believe in 2015 given that new exception the entire statute as a whole should be invalidated and if you're asking my opinion I would say just that just that exemption would be would be invalidated by the by the statute I see that I that I have have one one one minute left but I think just going back to it when we're interpreting what question and I the one thing that bothers me one of the things that bothers me about your position I suppose and both positions by the way have problems so don't get me wrong here but um you're you the reading of the statute would be store telephone numbers to be called and would stop there for store and then produce telephone numbers to be called and then the phrase using a random or sequential number generator that entire thing would be would would cover produce only it just seems very just an odd construction to me that that that object would stop there for store but then the whole phrase would apply to produce I mean go ahead no I was gonna say and I think that kind of gets back to how imperfect the language is but using a random because it's using a random or sequential number generator that is an adverbial phrase applying to a verb which only applies to store or produce as we've as we've acknowledged you cannot store using a random or sequential number generator you can produce using a random or sequential number generator in fact produce and generate or somewhat synonymous of each other but that tells you how a number is is produced with a random or sequential number generator how is it stored it's just stored in a list that cannot be applied to the storage function of an ATVS. Thank you, your time is up. Thank you very much. Mr. Sinskey, rebuttal? Okay, now you're on. One of the things to point out is what the purpose of this particular act was and it was indiscriminate filing and as opposing counsel noted yes there were there were comments about how 9-1-1 operators would answer a call and they would be told yeah congratulations this is your lucky day how would you like to buy you know a timeshare in Florida that's not talking about here. At the time that this statute wasn't there were random number generators that would generate 9-1-1 like why were they not generating seven digit numbers or 10? It was a heyday of telemarketing I mean it's literally random and sequential and what they would do the historical record the legislative history shows how this would bring down cell networks because of this just huge indiscriminate dialing it would bring down cell networks it would interfere with you know in 9-1-1 calls I mean that was the concern that's what they were looking at but the regulatory record as I noted earlier in terms of the comments which I urged the court to read cited both in the 7th circuit and in the 11th circuit decision makes it very clear that there were generators that could store numbers and not necessarily just produce them those existed and the use of the language was very specific for that point. There was really no problem until 2003 the FCC never took the position dialing from a stored list violated the TCPA and it wasn't until the technology changed in 2003 that the FCC was looking at a situation where the statute didn't capture the change in technology and then we're using the regulatory authority to try to fill in that legislative gap that's not the FCC's the FCC doesn't have the ability to do that doesn't have the authority to do that to the extent that legislative gap has to be filled because of the change in technology that's for Congress to do. How does that argument cut I mean I don't so if you know if an iPhone is covered by the statute an iPhone is covered by the statute right? Because it stores that's right a smartphone a smartphone stores numbers and if I'm driving down the road down to Cincinnati to argue before the sixth circuit and I put on my do not disturb message for anyone that that automatically goes out that turns my smartphone into an auto dialer under the statute. Does the do not disturb message just go when somebody tries to disturb you? It does if someone tries to call me that is the response text messages are covered by the TCPA and that's a response that they get and that's some of the courts. You're not initiating in that hypo you're not initiating the call to the recipient right? Does that make sense? But I'm placing a text or responding to that initiate to the person who's calling me I'm sending a text it is dialing from my system automatically. Has there been a case that is held that this provision of the TCPA applies to responsive actions by people such as your client? There has not been a case that I'm aware of but the scenario that I have described to the court is one that courts that have adopted the statutory interpretation that the 7th circuit espoused and the 11th circuit espoused have said this is this is the consequence of adopting the broad interpretation that the FCC had espoused that it would turn every smart phone that had an automatic text message reply into you know that person is a violator and waiting under the TCPA. If the statute says that then the statute says that why do we I mean what what do we do with that? It goes beyond it goes this by interpreting the statute to say store and produced is is um it's simply calling from a stored list which is what my text message would be simply a response from a stored list is not enough. There has to be random and sequential generation in connection with both functions and there were devices when this statute was in action and acted where both functions were enabled. There were patents that the comments talked about that was that were is there an actual device that you could you could mention that would store using random generated? There were devices that were actually mentioned in the comments that were submitted to the FCC cited in both the 11th circuit case and in the 7th circuit case and discussed how patents had been issued on those devices as I recall at least 10 years before the TCPA was enacted and the the commoner the the noble corporation went through that analysis a lot of it is mind bogglingly bogglingly just technical but they identified yes there were devices that simply stored randomly and sequentially generated numbers and didn't necessarily produce them. That's why again I would urge the court to read that those comments because they are enlightening as to what was going on at the time that the statute was enacted that in a sense. Thank you and I see your red card is on as well so it's it's a little bit complicated with this method of keeping track but we appreciate both of your arguments and the case will be submitted and you can now disconnect in the clerk's office with us into our next case. Thank you very much. Thank you.